# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

**DUANE GRANT**
600 N. 707 East
Rupert, ID 83350
and
**ERVIN SCHLEMMER**
51 Leslie Road,
Joliet, Montana 59041
and
**JOHN SNYDER**
1200 E. Hilltop Drive
Worland, Wyoming 82401
and
**DON STEINBEISSER, JR.**
11812 Cty Rd 348
Sidney, Montana 59270
and
**MARK WETTSTEIN**
3680 Alameda Drive
Ontario, Oregon 97914
and
**SNAKE RIVER SUGAR COMPANY** and
**AMALGAMATED SUGAR COMPANY LLC**
1951 S. Saturn Way, Suite 100
Boise, Idaho 83709
and
**AMERICAN CRYSTAL SUGAR COMPANY**
101 North 3rd Street
Moorhead, Minnesota, 56560
and
**MICHIGAN SUGAR COMPANY**
2600 S. Euclid Avenue
Bay City, Michigan, 48706
and
**MINN-DAK FARMERS COOPERATIVE**
7525 Red River Road,
Wahpeton, North Dakota 58075
and
**SIDNEY SUGARS INC.**
35140 County Rd 125
Sidney, Montana 59270
and

Civil Action No. _____

**COMPLAINT**

**SOUTHERN MINNESOTA BEET SUGAR COOPERATIVE**
83550 County Road 21
Renville, Minnesota, 56284
and
**WESTERN SUGAR COOPERATIVE**
7555 East Hampden Avenue
Denver, Colorado 80231
and
**WYOMING SUGAR**
P.O Box 468,
Worland, Wyoming 82401
and
**AMERICAN SUGAR BEET GROWERS ASSOCIATION**
1156 15th Street, NW, Suite 1101
Washington, D.C. 20005
and
**UNITED STATES BEET SUGAR ASSOCIATION**
1156 15th Street, NW Suite 1019
Washington, DC 20005,
and
**SYNGENTA SEEDS, INC.**
11055 Wayzata Blvd.
Minnetonka, Minnesota 55305
and
**BETASEED, INC.**
1788 Marschall Road P.O. Box 195
Shakopee, MN 55379


                    Plaintiffs,
        vs.

**THOMAS J. VILSACK**, Secretary of the U.S.
Department of Agriculture
1400 Independence Ave., S.W.
Washington, D.C. 20250
and
**CINDY SMITH**, Administrator,
**ANIMAL AND PLANT HEALTH INSPECTION SERVICES**
1400 Independence Avenue, S.W.
Washington, D.C. 20250
and

**CENTER FOR FOOD SAFETY**
660 Pennsylvania Ave., S.E., Suite 302
Washington, D.C. 20003
and
**SIERRA CLUB**
85 Second Street, 2nd Floor
San Francisco, California 94105

Defendants.

Plaintiffs Duane Grant, Ervin Schlemmer, John Snyder, Don Steinbeisser, Jr., Mark Wettstein, Snake River Sugar Company and The Amalgamated Sugar Company LLC, American Crystal Sugar Company, Michigan Sugar Company, Minn-Dak Farmers Cooperative, Sidney Sugars, Inc., Southern Minnesota Beet Sugar Cooperative, Western Sugar Cooperative, Wyoming Sugar Company LLC, American Sugar Beet Growers Association, United States Beet Sugar Association, Syngenta Seeds, Inc., and Betaseed, Inc. (collectively "Plaintiffs") bring this Complaint against defendants Thomas J. Vilsack, Secretary of the U.S. Department of Agriculture ("USDA"), Cindy Smith, Administrator, Animal and Plant Health Inspection Services, ("APHIS"), an agency within USDA (collectively the "Government Defendants"); and against the Center for Food Safety and the Sierra Club (the "Non-Governmental Defendant[s]"), and hereby allege as follows:

**INTRODUCTION & SUMMARY OF CLAIMS**

1.     Plaintiffs are: (1) family farmers who grow sugarbeet crops; (2) farmer-owned processing cooperatives and entities that process sugarbeets into sugar; (3) trade associations that represent the interests of sugarbeet farmers and processors; and (4) sugarbeet seed producers. This Complaint challenges certain conditions of APHIS's action that partially deregulates the Roundup Ready sugarbeet ("RRSB") root crop and requires permits and notifications for the

seed crop production during the period that APHIS is conducting an Environmental Impact Statement ("EIS") under the National Environmental Policy Act ("NEPA"). Over one million acres of sugarbeets are grown in the United States each year and they produce more than half of the domestic sugar supply annually. RRSB are a genetically-engineered variety of sugarbeets that are resistant to the U.S Environmental Protection Agency ("EPA") designated "Reduced Risk" herbicide, glyphosate. The sugar produced from RRSB is identical to sugar from conventional sugarbeets. But in contrast to conventional sugarbeets, RRSB enable U.S. farmers to grow higher yielding crops and avoid environmentally damaging tillage practices, while employing less toxic herbicides. In recent years, RRSB constituted approximately 95 percent of the U.S. sugarbeet crop.

2.      After months of work, on February 4, 2011 APHIS announced its administrative actions specifying that RRSB growers, processors and seed producers would be subject to a range of interim cultivation and handling conditions for RRSB (hereinafter the "Administrative Actions") pending APHIS's review of an administrative petition for full unconditional deregulation of the crop. While many of these conditions are sensible and appropriate as interim measures, certain of the conditions (specified below) are unnecessary and not in accordance with law ("Challenged Conditions"). Specifically, the Challenged Conditions are unnecessary to comply with NEPA, are significantly burdensome for sugarbeet growers and processors and seed producers and unjustified under APHIS's Plant Protection Act ("PPA") authority. Accordingly, Plaintiffs seek declaratory and other relief relieving RRSB growers and processors and seed producers from the obligation to comply with the Challenged Conditions as they plant upcoming and future RRSB seed and root crops for production, processing and sale of sugar and by-products under APHIS's Administrative Actions, and declaring that such conditions exceed

4

APHIS's authority under the PPA, are arbitrary and capricious, and are unnecessary to ensure that APHIS's action complies with the PPA and that APHIS has complied with the National Environmental Policy Act (NEPA) in reaching its decision.

3.      In the alternative, Plaintiffs seek a declaratory judgment that the APHIS Administrative Actions comply with NEPA (including both the challenged and unchallenged conditions on RRSB seed and root crop cultivation). Defendants Center for Food Safety and Sierra Club have previously challenged two prior APHIS determinations allowing cultivation of RRSB, alleging violations of NEPA and seeking injunctive relief halting planting or requiring Plaintiffs to plow under and destroy their crops. They have publicly stated that they will do so again to disrupt Plaintiffs' 2011 seed and root crop and sugar production from that crop. Specifically, Plaintiffs seek a determination that APHIS's voluminous Environmental Assessment ("EA") and accompanying Finding Of No Significant Impact ("FONSI") complies with NEPA.

## THE PARTIES

4.      Plaintiffs Duane Grant, Ervin Schlemmer, John Snyder, Don Steinbeisser, Jr., and Mark Wettstein are individual farmers who have grown and relied on RRSB for multiple years and who would suffer significant losses if RRSB cultivation is halted in 2011. Plaintiff Grant has been farming sugarbeets in Idaho since approximately 1980. In 2009 he planted 6,116 acres of RRSB and planted 5,934 acres of RRSB in 2010. Plaintiff Schlemmer is a sugarbeet farmer residing at 51 Leslie Road, Joliet, Montana 59041. He farms about 200 acres of sugarbeets a year and has been planting 100% RRSB since 2008. Plaintiff Snyder has been farming sugarbeets in Wyoming since 1981. Annually, he plants approximately 700-800 acres in sugarbeets. In 2009 he planted 554 acres in RRSB and, in 2010, he planted 745 acres which

were 100% RRSB.  Plaintiff Steinbeisser resides at 11812 Cty Rd 348, Sidney, Montana 59270

and has been farming sugarbeets for 30 years.  Annually, he farms approximately 900 acres of

sugarbeets and has been planting 100% RRSB since 2008.  Plaintiff Wettstein has been farming

sugarbeets since 1968 and currently resides at 3680 Alameda Drive, Ontario, Oregon, 97914.  He

farms approximately 300 acres of sugarbeets and has been planting 100% RRSB since 2008.

     5.     Plaintiffs Snake River Sugar Company ("Snake River) and The Amalgamated

Sugar Company LLC ("Amalgamated"), American Crystal Sugar Company ("American

Crystal"), Michigan Sugar Company ("Michigan"), Minn-Dak Farmers Cooperative ("Minn-

Dak"), Sidney Sugars, Inc., Southern Minnesota Beet Sugar Cooperative ("Southern Minn"),

Western Sugar Cooperative (Western"), and Wyoming Sugar LLC ("Wyoming") are the

domestic sugarbeet cooperatives and processers located in the United States who grow and

process RRSB into sugar for sale commercially.  American Crystal also produces sugarbeet seed.

Snake River and Amalgamated's principal place of business is 1951 S. Saturn Way, Suite 100,

Boise, Idaho 83709, American Crystal's principal place of business is 101 North 3rd Street,

Moorhead, Minnesota, 56560, Michigan's principal place of business is 2600 S. Euclid Avenue,

Bay City, Michigan 48706, Minn-Dak's principal place of business is 7525 Red River Road,

Wahpeton, North Dakota 58075, Sidney Sugars' principal place of business is 35140 County Rd

125, Sidney, Montana 59270, Southern Minn's principal place of business is 83550 County Road

21, Renville, Minnesota 56284, Western's principal place of business is 7555 East Hampden

Avenue, Denver, Colorado 80231, and Wyoming's principal place of business is P.O Box 468,

Worland, Wyoming 82401.

     6.     Plaintiff American Sugarbeet Growers Association ("ASGA") is a national

association of sugarbeet growers that represents virtually all of the family farms in the U.S. that

grow sugarbeets and are subject to the conditions of the partial deregulation that are the subject of this lawsuit. ASGA's principal place of business is 1156 15th Street, NW, Suite 1101, Washington, D.C. 20005.

7.      Plaintiff United States Beet Sugar Association (USBSA) is a national trade association that represents the interests of the nation's beet sugar processing industry including sugarbeet processors who are subject to the conditions of the partial deregulation that are the subject of this lawsuit. USBSA's principal place of business is 1156 15th Street, NW Suite 1019 Washington, DC 20005.

8.      Plaintiff Syngenta Seeds, Inc. ("Syngenta") is a Delaware corporation that produces and sells RRSB seed and is subject to the permit conditions for seed crop production contained in the Administrative Action. Syngenta is one of the three primary producers of sugar beet seeds in the United States. Syngenta began planting 100% RRSB seed for its commercial sales in 2007. Approximately ninety-five percent of Syngenta's customers purchased RRSB seed in the 2010 season. Plaintiff Syngenta's principal place of business is 11055 Wayzata Blvd., Minnetonka, Minnesota 55305.

9.      Plaintiff Betaseed, Inc. ("Betaseed") is a Minnesota Corporation that produces and sells RRSB seed. Betaseed accounts for approximately half of all sugarbeet seed sales in North America. Betaseed has relied on selling RRSB seed since RRSB was deregulated in 2005. Approximately ninety-five percent of Betaseed's customers purchased RRSB seed in the 2010 season. Plaintiff Betaseed's principal place of business is 1788 Marschall Road P.O. Box 195, Shakopee, Minnesota 55379.

10.     Defendant APHIS is an agency within Defendant USDA. APHIS is responsible for protecting the health and value of American agriculture and natural resources, and pursuant

to the federal Coordinated Framework for Regulation of Biotechnology, regulates certain genetically-engineered crops based on "sound science" pursuant to the PPA. USDA is responsible for overseeing the decisions and actions of APHIS. USDA, through APHIS, reviewed environmental impacts of RRSB and issued an Environmental Assessment (EA) and Finding of No Significant Impact (FONSI) prior to issuing the Administrative Actions at issue in this case. The headquarters and principal place of business of USDA and APHIS is 1400 Independence Avenue, SW, Washington, D.C. 20250.

11. Defendant Cindy Smith has served as Administrator of APHIS since September 2007. In that role, Ms. Smith heads APHIS and reports to the Secretary of USDA.

12. Defendant Thomas J. Vilsack has served as Secretary of USDA since January 21, 2009. In that role he is head of USDA.

13. Defendant Center for Food Safety ("CFS") is a nonprofit corporation organized and existing under the laws of Washington, D.C. Its national headquarters and principal place of business is 660 Pennsylvania Ave., SE, Suite 302, Washington, D.C. 20003. CFS has previously served as lead plaintiff and funded multiple suits alleging that administrative determinations to allow RRSB cultivation violated NEPA and seeking preliminary and permanent injunctive relief against plaintiffs to halt their cultivation and use of RRSB or to destroy RRSB fields.

14. Defendant Sierra Club is a national nonprofit corporation organized and existing under the laws of California with major offices and operations in Washington, D.C. The Sierra Club previously participated in prior NEPA litigation regarding RRSB planting and cultivation.

## JURISDICTION AND VENUE

15. This Court has subject matter jurisdiction over Plaintiffs' claims pursuant to 28 U.S.C. § 1331, 28 U.S.C. § 2201, 5 U.S.C. § 702 and 5 U.S.C. § 706.

16.     This Court has personal jurisdiction over Government Defendants APHIS, USDA, APHIS Administrator Cindy Smith, and Secretary Thomas J. Vilsack in their official capacities, as each is an agency or official of the United States Government.

17.     This Court has personal jurisdiction over Non-Governmental Defendant CFS because it is headquartered and operates its principal place of business in Washington, D.C.

18.     This Court has personal jurisdiction over Non-Governmental Defendant Sierra Club because the Sierra Club regularly conducts activities in Washington, D.C. including Board and General Meetings, frequent litigation in district as a plaintiff and intervenor, and because it solicits members in Washington, D.C. and has a Washington, D.C. chapter with more than 3600 members.

19.     Venue is proper in this Court under 28 U.S.C. § 1391(b), (e) because (1) all defendants reside in the District of Columbia; (2) the challenged actions in this case, that is the decisions made by Government Defendants, occurred here; or (3) at least one defendant is an agency of the United States that resides in the District of Columbia.

## STATUTORY AND REGULATORY BACKGROUND

20.     Three federal agencies—the Food and Drug Administration ("FDA"), the EPA, and USDA's APHIS—review genetically-engineered crop varieties as part of the federal regulatory "Coordinated Framework for Regulation of Biotechnology" for such crops (51 Fed. Reg. 23,302 (June 26, 1986)); FDA reviews the safety of food/feed for humans and animals under the Federal Food, Drug and Cosmetic Act ("FFDCA"); EPA examines potential health and environmental impacts of associated pesticide use under the FFDCA and the Federal Insecticide, Fungicide, and Rodenticide Act ("FIFRA"); and APHIS examines whether the crop presents a "plant pest" risk under the PPA.  In the past 20 years, following FDA and EPA reviews, APHIS

has granted unconditional, non-regulated status to more than 75 genetically-engineered crop varieties, including 35 herbicide-tolerant crops. With respect to RRSB, FDA and EPA completed their reviews several years ago and such reviews are not at issue in this litigation.

*The Plant Protection Act ("PPA")*

21.     The PPA requires USDA, through APHIS, to examine whether crops present a "plant pest" risk under the statute.  7 U.S.C. §§ 7701 *et seq*.  Under governing APHIS regulations, certain genetically-engineered plants that APHIS determines are "plant pests" or has reason to believe are "plant pests" are subject to regulation by APHIS as "regulated articles." 7 C.F.R. § 340.1; 7 U.S.C. § 7758.

22.     APHIS is obligated to grant nonregulated status, based on sound scientific principles, if the genetically-engineered crop is "unlikely to pose a greater plant pest risk than the unmodified organism from which it was derived."  7 C.F.R. § 340.6(c)(4).  APHIS examines a range of data from authorized field testing of the genetically-engineered varieties in reaching these findings, typically after many field trials under APHIS regulatory permits and notifications, along with scientific studies and other relevant peer reviewed scientific materials.  *Id.* at § 340.6(b)(5).

23.     A petitioner may request that APHIS remove a genetically-engineered crop from regulation if it is unlikely to pose a plant pest risk.  *Id.* at § 340.6.  If a petition for nonregulated status is granted in full without conditions—an action commonly known as "deregulation"—the genetically-engineered crop may be planted, used and sold with no further Federal regulatory oversight.  If a petition for nonregulated status is approved only in part, the cultivation of the genetically-engineered crop may be subject to conditions or restrictions imposed by APHIS.  A petition may be approved in part as an interim measure, pending completion of review of a

petition for full unconditional deregulation. *See, e.g. Monsanto Co. v. Geerston Seed Farms*, 130 S. Ct. 2743, 2750 (2010).

<u>*The National and Environmental Policy Act ("NEPA")*</u>

24.     The purpose and intent of NEPA is to make environmental information available to public officials and the public so that it may be considered during the decision-making process for a major federal action. 42 U.S.C. § 4332; 40 C.F.R. § 1500.1(c).  To accomplish this, NEPA imposes certain procedural requirements on federal agencies to ensure the compilation and review of information regarding environmental impacts. 40 C.F.R. § 1501.

25.     NEPA's requirements are purely procedural—the law does not mandate any particular substantive decision.

26.     NEPA and its implementing regulations recognize that there are different types of federal agency actions, and these different actions may require varying levels of scrutiny of the potential environmental effects.  Routine actions which normally do not require preparation of an Environmental Impact Statement ("EIS") may be "categorically excluded" from the NEPA review process.  40 C.F.R. § 1508.4.  And an agency need not conduct a full EIS for major federal actions that are non-routine if it concludes, based on an EA, that such an action will not significantly impact the environment (*i.e.*, a FONSI).  40 C.F.R. §§ 1508.9, 1508.13.  Finally, even when a major federal action does require an EIS, an agency may take interim or partial action (of lesser scope than the full federal action) while preparing the EIS provided the agency concludes that the interim or partial action will have no significant impact.   40 C.F.R. § 1506.1(c).

27.     The APHIS Administrative Actions at issue in this suit were evaluated under the procedural requirements of NEPA.

### The Administrative Procedures Act ("APA")

28.     The APA governs the process by which federal administrative agencies may propose and enact regulations or issue orders and other binding decisions.  5 U.S.C. § 551 *et seq.*

29.     The statute establishes a right to judicial review, including suits for declaratory judgment (5 U.S.C. § 703) for private parties seeking to challenge a final agency action that is (1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) contrary to a constitutional right, power, privilege, or immunity; (3) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right; or (4) without observance of procedure required by law.  *Id.* at § 706.

### Declaratory Judgment Act ("DJA")

30.     The DJA allows judicial review of "actual controversies" among "interested parties" 28 U.S.C § 2201(a).  The Supreme Court has interpreted the standard to be whether the facts alleged show that there is a "substantial controversy" of "sufficient immediacy and reality to warrant the issuance of a declaratory judgment."  *MedImmune, Inc. v. Genetech, Inc.*, 549 U.S. 118, 127 (2007).

### Genetically-engineered Crops, Sugarbeet Cultivation & the Development of RRSB

31.     Over 75 types of genetically-engineered ("GE") crops have been fully deregulated by APHIS since 1995.  In 2008-09, GE crops accounted for 85% of the corn, 91% of the soybeans, 88% of the cotton, and 95% of the sugarbeets grown in the United States.

32.     GE crops have experienced widespread adoption in the U.S. marketplace because of their enormous benefits such as higher yields, disease and insect resistance, compatibility with less toxic pesticides, improved soil and water conservation, reduction in fuel usage, reduction in greenhouse gases, reduced soil erosion, lower operating costs, and increased farm income.

33.   Approximately 1.1 million acres of sugarbeets are grown in the U.S. annually. More than 99% of U.S. sugarbeet acreage is used to grow sugarbeet root crops—primarily in upper Midwestern and Mountain West states—which are processed to produce sugar supplying consumers and food manufacturers.   No RRSB crops are grown in California.   Sugarbeet root crops are planted in the spring and harvested in the fall (when sugar content of the root is highest) before the plants reach their reproductive phase and produce pollen or seed.

34.   Less than 1% (0.4%) of U.S. sugarbeet acreage is grown for sugarbeet seed production.   In contrast to root crops, sugarbeet seed crops are deliberately allowed to reach their reproductive stage (producing pollen and seed) following a period of winter vernalization.   A majority of sugarbeet seed acreage has been grown in the Willamette Valley of Oregon. Sugarbeet seed crops are not grown in the same areas as sugarbeet root crops.

35.   Sugarbeet production requires intensive weed control to fight off weeds which, if allowed to flourish, can diminish the sugar yields in sugarbeets by as much as 75%.   To combat these weeds, conventional sugarbeet farmers traditionally used a combination of up to six herbicides that are difficult to apply, expensive, toxic, and can substantially decrease sugarbeet yield.

36.   Prior to the advent of RRSB, several other Roundup Ready GE crops had been fully deregulated and put in wide scale use across the U.S.   Glyphosate, the active pesticidal ingredient in Roundup agricultural pesticides, is less toxic than many alternative herbicides utilized on conventional sugarbeets, and Roundup Ready GE crops are engineered to allow farmers to apply glyphosate-based herbicides to kill weeds without damaging the crops. Glyphosate controls nearly every species of weeds that may grow in sugarbeet fields, dissipates rapidly in the soil without residue, is cheaper than alternative herbicide applications and can be

applied without any specialized safety equipment. The Environmental Protection Agency has granted glyphosate as a "reduced-risk" status when approving the herbicide's use on RRSB.

37.     The first RRSB varieties were field tested beginning in the late 1990s. After 7 years and more than 100 field tests of RRSB, a petition for nonregulated status was submitted to APHIS. In March 2005, after reviewing the public comments, which overwhelmingly favored unconditional deregulation (41-to-3), APHIS issued an EA and FONSI for RRSB. 70 Fed. Reg. 13,007 (March 17, 2005). Based on the field testing data and a range of other scientific information, APHIS determined that RRSB was not a "plant pest" and approved the petition for unconditional nonregulated status in full. *Id.* Farmers adopted RRSB rapidly thereafter: USDA's Economic Research Service estimates that adoption of the GE sugarbeet varieties exceeds 95% of U.S. sugarbeet production, and accounts for more than half of the nation's domestically produced sugar.

*Prior Sugarbeet Litigation and Threats of Future Suit*

38.     In January 2008, three years after APHIS's unconditional deregulation of RRSB, CFS and other non-governmental parties sued APHIS alleging that the deregulation decision violated NEPA and the PPA, and sought to halt sugarbeet farmers and seed producers from planting their crops.

39.     On September 21, 2009, the U.S. District Court for the Northern District of California held that the EA prepared by APHIS in advance of unconditionally deregulating RRSB in 2005 failed to take a hard look at the possibility of cross-pollination between RRSB seed crops and other seed crops in the Willamette Valley in Oregon.[1] In the remedies phase of

---

[1]     This decision is currently being appealed before the U.S. Court of Appeals for the Ninth Circuit. Additionally, APHIS is in the process of preparing an EIS regarding the determination of non-regulated status, and anticipates issuing the EIS in May 2012.

that suit, plaintiffs sought injunctive relief to halt planting of the entire RRSB crop (both seed and root crops). Plaintiffs' requests for injunctive relief were denied. On August 13, 2010, the district court partially vacated APHIS's unconditional deregulation determination, allowing crops that had previously been planted to be harvested, but invalidating APHIS's deregulation determination, such that ongoing or future planting of both RRSB seed and root crops would require additional APHIS authorization.

40.     Thereafter, on September 1, 2010, APHIS announced that it would take two regulatory steps while working to complete an EIS to inform a new unconditional deregulation decision regarding RRSB: (1) APHIS would grant certain permits to seed producers to plant limited acreage for cultivation of "stecklings" (immature sugarbeet plants for possible future use in RRSB breeding or seed production); and (2) in accord with the Supreme Court's recent decision in *Monsanto v. Geertson*, APHIS would take public comment on a proposal to grant an interim "partial deregulation" or take other regulatory action temporarily allowing cultivation of both the RRSB seed and root crops subject to a series of mandatory cultivation and handling conditions.

41.     CFS challenged the first of these two regulatory actions – the steckling permits – on September 3, 2010, seeking an order requiring seed producers to rip out the planted fields. On November 30, 2010, the U.S. District Court for the Northern District of California granted Non-Governmental Defendant's motion for a preliminary injunction, and ordered RRSB seed producers to "plow under" the fields. The U.S. Court of Appeals for the Ninth Circuit immediately issued a stay of the district court's order, and the matter is currently before that court on appeal.

42.    CFS also threatened to file suit challenging the second proposed regulatory action – partial deregulation – which is the subject matter of this suit.  On December 10, 2010, the Center for Food Safety's staff attorney Paige Tomeselli stated, "If USDA continues . . . further commercial production of RRSB as proposed, . . .CFS will once again seek to halt the planting in court."  *See* Bill Tomson, USDA Seeking Approval of Genetically Modified Sugar Beets, Wall. St. J., Nov. 2, 2010; Jake Putnam, USDA Releases Plan to Allow Planting of Biotech Sugarbeets, Gem State Producer, Dec. 2010, at 7; Bill Tomson, New Court Dates Set Next Week on Genetically Modified Sugar, Dow Jones Newswires, Oct. 25, 2010.  CFS also filed comments with APHIS specifying the grounds on which it would challenge any future authorization to plant RRSB.

### *The New APHIS Determinations*

43.    On November 4, 2010, APHIS announced that it was making available to the public for comment and seeking comment a draft Environmental Assessment ("EA") for RRSB. 75 *Federal Register* 67945 (November 4, 2010).  The draft EA was a comprehensive technical review and analysis of the environmental and socio-economic potential impacts of the interim partial deregulation of RRSB.  APHIS attached a 30-day comment period to the draft EA.

44.    On February 4, 2011, APHIS released its voluminous final EA, including its response to public comments and its finding that cultivation and handling of RRSB subject to the conditions set out in the partial deregulation determination would not pose plant pest risks under the PPA.  The final EA cites to and relies upon more than 300 scientific studies, more than 100 field tests and the successful history of RRSB cultivation (without any government-mandated conditions) since 2005.

45.     On February 4, 2011, APHIS also announced its Administrative Actions allowing interim RRSB seed and root crop cultivation, processing and sale.  For the root crop, the Administrative Actions announced by APHIS, *inter alia*, set forth a regulatory scheme that grants partial deregulation of the RRSB root crop subject to a series of mandatory conditions on the planting and movement of the RRSB that are to be enforced through written compliance agreements between APHIS and the responsible parties.  The "mandatory conditions" include limitations on the geographic locations where RRSB can be grown; monitoring and elimination of "bolters"; training requirements for growers and field personnel, minimum rotation periods, recordkeeping and reporting, tertiary containment for seed movement, and other conditions.  The regulatory scheme also includes mandatory conditions to be imposed on the production of RRSB seed crops through permits issued to seed companies.

46.     A number of the conditions/restrictions on the RRSB root crop production activities that APHIS deemed "mandatory" for partial deregulation are vague, unduly burdensome, and unnecessary to comply with the PPA, constitute arbitrary and capricious agency action and are unsupported by the administrative record.  Among these Challenged Conditions are: 1) the unreasonably burdensome requirement that Plaintiff growers of RRSB report where "bolters are not observed" in their fields and requirements that Plaintiff growers notify APHIS "within 48 hours after finding a bolter; 2) the unnecessary and unduly burdensome and costly requirement of a 4 year rotation on Plaintiffs that is unconnected to the agency's purported purpose of monitoring for "volunteers"; 3) the impractical and unnecessary requirements that all Plaintiff "field personnel" as opposed to the growers be trained; 4) the impractical, unduly burdensome and costly requirements that obligate responsible parties

engaged in the interstate transportation of seed to employ multiple layers of containment in moving the seed; and 5) other conditions that are unnecessary to comply with the PPA

47. The burdens and costs on Plaintiffs growers and processors of RRSB from these challenged conditions are unreasonable and unnecessary. By way of example and not of limitation, the requirement of a 4 year rotation will adversely impact growers and processors. Either many growers will be unable to find sufficient acres to meet their contractual obligations to deliver their allocated volume of sugarbeets or it will substantially increase their costs beyond their margins. Because there is no risk of variety contamination in sugarbeet growing regions as Plaintiff growers apprised APHIS in their comments on the Draft EA, this requirement is unnecessary to comply with the PPA.

48. A number of the conditions on the RRSB seed crop production activities that APHIS deemed "mandatory" for issuing Part 340 regulatory permits and notifications are vague, unduly burdensome, and unnecessary to comply with the PPA, constitute arbitrary and capricious agency action and are unsupported by the administrative record.

49. The mandatory permit conditions imposed on seed production include *inter alia* the following: "A four-mile separation distance shall be maintained between male fertile H7-1 sugar beets and all other commercial Beta seed crops (i.e., table beets, Swiss chard) US wide" ("Condition 2"); and "A four-mile separation distance shall also be maintained between male sterile H7-1 sugar beets and all other commercial Beta seed crops US wide" ("Condition 4"). These Challenged Conditions are vague, unduly burdensome, and unnecessary to comply with the PPA, constitute arbitrary and capricious agency action and are unsupported by the administrative record. These conditions are not supported by any plant pest risk that could be posed by relevant production efforts.

50.   The mandatory permit conditions on seed production would also require that "Fields shall be monitored for three years and any volunteer beet plants shall be destroyed. If the same land is used for crop cultivation during the three-year volunteer monitoring period, that crop shall be visually distinct from sugar beets or the fields left fallow" ("Condition 13"). Condition 13 is vague, unduly burdensome, and unnecessary to comply with the PPA, constitutes arbitrary and capricious agency action and is unsupported by the administrative record. Condition 13 is not supported by any plant pest risk that could be posed by relevant production operations and steckling production fields, where sugar beet volunteers are visually distinct and easily identifiable when sugar beets are grown in the same field in subsequent years. Condition 13 will impose unnecessary costs on seed producers to identify and lease additional production acreage or to forego production if additional acreage cannot be found.

51.   Permit Conditions 2, 4 and 13 will impose unreasonable restrictions on Plaintiffs' ability to conduct seed production operations.

## Substantial Controversy with Non-Governmental Defendants

52.   Because of the Non-Governmental Defendant's past actions and threats of further action, there is a real and present controversy which poses a significant threat to our nation's sugar supply in the 2011 crop year and which endangers the livelihood of our nation's sugarbeet growers and sugar refiners.  Plaintiffs require a clear judicial determination that their RRSB planting in 2011 will be in accordance with law, and that a subsequent court order will not require Plaintiffs to "plow under" or otherwise "destroy" those crops.

53.   This is a substantial and immediate controversy and directly affects Plaintiffs' immediate interests.  The Non-Governmental Defendants have indicated that they intend to seek a judicial order halting Plaintiffs' conduct and/or destroying Plaintiffs' property.

## COUNT I

### *(Declaratory Judgment – The Challenged Conditions Exceed*

### *APHIS's PPA Authority and are Unnecessary to Comply with NEPA)*

54.     Plaintiffs reallege and incorporate by reference herein all preceding paragraphs of this Complaint.

55.     APHIS's decision to authorize commercial production of RRSB seed and root crop during pending APHIS's review of an administrative petition for full unconditional deregulation of the crop constitutes final agency action and is subject to judicial review under the APA.  5 U.S.C. §§ 702, 703, 704, 706.

56.     The Challenged Conditions imposed by APHIS exceed its authority under the PPA and are unnecessary to comply with NEPA.

57.     APHIS's imposition of the Challenged Conditions is "arbitrary," "capricious," an "an abuse of discretion" and not otherwise in accordance with law.  Thus, subjecting RRSB growers to these unjustified conditions violates Section 706 of the APA.

58.     APHIS's conduct is ongoing and immediate.  As a result of the ongoing conduct of APHIS, Plaintiffs have been harmed and are being harmed because of the costs involved with complying with the unnecessary and burdensome APHIS requirements.

59.     Plaintiffs request the Court issue an order declaring that the Challenged Conditions exceed APHIS's authority under the PPA, are arbitrary and capricious, are unnecessary to ensure that the APHIS Administrative Actions comply with the PPA and declaring that APHIS has complied with NEPA, and issue other appropriate relief in accordance therewith.

## COUNT II

### *(Declaratory Judgment – In the Alternative, APHIS's Administrative Actions as a Whole Complies With NEPA)*

60.     Plaintiffs reallege and incorporate by reference herein paragraphs 1-54 of this Complaint.

61.     Non-Governmental Defendants have repeatedly engaged in litigation to challenge APHIS's authority to authorize the cultivation and use of RRSB and have sought relief with direct, immediate and severe effects on Plaintiffs' conduct and property.

62.     Non-Governmental Defendants have expressly stated that they plan to challenge any action by APHIS to allow the cultivation of RRSB prior to completion of an EIS and plan to seek relief "to halt" Plaintiffs' planting.

63.     This conduct by Non-Governmental Defendants is ongoing and immediate and causes harm to Plaintiffs, including creating substantial uncertainty regarding Plaintiffs' legally authorized planting of RRSB this season and in the future, and threatening the livelihood of sugarbeet growers and the viability of farmer cooperatives and other processors that rely on RRSB planting.

64.     The Administrative Actions at issue require RRSB growers and seed producers to undertake a variety of measures to comply with the compliance agreement and permit conditions. For example, application of the three-year commercial seed crop rotation requirement to all seed field would deprive seed producers of the annual use of cropland to produce stecklings or otherwise to conduct ongoing research and development activities.  Additionally, growers have to purchase additional acres at substantial expense (if even available) because of the 4 year

rotation requirement. For this and other reasons, Plaintiffs need certainty that the compliance agreements and permits are legally valid.

65.    Plaintiffs ask the Court to declare that APHIS's EA, and accompanying FONSI associated with its Determinations, comply with NEPA.

**PRAYER FOR RELIEF**

**WHEREFORE,** Plaintiffs respectfully requests that this Court:

A.    Enter an order declaring that the Challenged Conditions imposed by APHIS are beyond its authority under the PPA, arbitrary and capricious and unnecessary to ensure that APHIS's Administrative Actions comply with NEPA, and directing APHIS to take action in accordance therewith.

B.    Alternatively, enter an order declaring that APHIS's EA and accompanying FONSI associated with its Administrative Actions comply with NEPA.

C.    Award Plaintiffs their costs of litigation and attorney fees.

D.    For such other relief as justice demands.

Dated: February 7, 2011

Respectfully submitted,

By: _John F. Bruce_
John F. Bruce (D.C. Bar No. 1578)
Gilbert S. Keteltas (D.C. Bar No. 421236)
Christopher H. Marraro (D.C. Bar No. 395152)
HOWREY LLP
1299 Pennsylvania Avenue, N.W.
Washington, DC 20004-2402
Telephone: (202) 783-0800
Facsimile: (202) 383-6610

*Attorneys for Plaintiffs*

By: _Nancy S. Bryson_
Nancy S. Bryson (D.C. Bar No. 913673)
John A. Bryson (D.C. Bar No. 235846)
Alison M. Suthers (D.C. Bar No. 995789)
Holland & Hart LLP
975 F Street NW, Suite 900
Washington, DC  20004
Telephone: (202) 654-6921

*Attorneys for Plaintiff Syngenta Seeds, Inc.*

By: _____
Scott N. Auby (D.C. Bar No. 444951)
Debevoise & Plimpton LLP
555 13th Street, N.W.
Washington, D.C.  20004
Telephone: (202) 383-8000

Daniel M. Abuhoff
     (*pro hac vice* motion to be filed)
Harry Zirlin   (*pro hac vice* motion to be filed)
Debevoise & Plimpton LLP
919 Third Avenue
New York, NY  10022
Telephone: (202) 909-6000

*Attorneys for Plaintiff Betaseed, Inc.*