**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **DUANE GRANT, et al.,**<br><br>  Plaintiffs,<br><br>**MONSANTO COMPANY,**<br><br>  Intervenor Plaintiff,<br><br>  v.<br><br>**THOMAS J. VILSACK, et al.,**<br><br>  Federal Defendants,<br><br>**CENTER FOR FOOD SAFETY, et al.,**<br><br>  Non-Governmental Defendants. | Civil Action No. 11-308 (JDB)<br>(Consolidated with Civil Action<br>No. 11-586 (JDB)) |
| **CENTER FOR FOOD SAFETY, et al.,**<br><br>  Plaintiffs,<br><br>  v.<br><br>**THOMAS J. VILSACK, et al.,**<br><br>  Federal Defendants,<br><br>**MONSANTO COMPANY,**<br><br>  Intervenor Defendant,<br><br>**DUANE GRANT, et al.,**<br><br>  Intervenor Defendants. | Civil Action No. 11-586 (JDB)) |

1

## **MEMORANDUM OPINION & ORDER**

Two groups of plaintiffs in these consolidated cases have brought actions challenging the U.S. Department of Agriculture's Animal and Plant Health Inspection Service's ("APHIS") interim decision partially deregulating a genetically engineered variety of sugar beet. APHIS has since issued a final decision fully deregulating the sugar beets, and the challenged interim decision has expired. For the reasons explained herein, the Court will dismiss these actions as moot.

## **BACKGROUND**

Sugar beets are leafy green vegetables with a sucrose-rich tap root prized for domestic refined sugar production. A biennial crop, sugar beets develop the tap root in the first year (the vegetative stage) and a flowering seed stalk in the second year (the reproductive stage). This dispute concerns Roundup Ready sugar beets, which are genetically engineered to withstand glyphosate-based herbicides like the "Roundup" brand. When a gene from a species of Agrobacterium is inserted into the sugar beet, the plant's metabolic process becomes unaffected by glyphosate. Because such bacteria are identified as plant pests, 7 C.F.R. § 340.2(a), Roundup Ready sugar beets are regulated articles under the Plant Protection Act, 7 U.S.C. §§ 7701 et seq.

APHIS originally deregulated Roundup Ready sugar beets in 2005 upon petition by Monsanto Company ("Monsanto") and KWS SAAT AG (KWS). A federal court in California vacated the deregulation decision several years later, finding the agency's assessment of the environmental impact inadequate, in particular as to the possibility that genetically engineered sugar beets will cross pollinate with and contaminate non-genetically engineered plants. Ctr. for

Food Safety v. Vilsack, 734 F. Supp. 2d 948, 950, 955 (N.D. Cal. 2010); see also Ctr. for Food Safety v. Vilsack, No. 08-484, 2009 WL 3047227, at *6-9 (N.D. Cal. Sept. 21, 2009).

After the vacatur, Roundup Ready sugar beet companies applied for permits to plant sugar beet seedlings, called stecklings. In August 2010, APHIS issued four temporary permits, authorizing steckling growth on several hundred acres, but prohibiting flowering or pollination and requiring applicants to remove and destroy any flowering plants. Ctr. for Food Safety v. Vilsack, 636 F.3d 1166, 1170-71 (9th Cir. 2011). A group of plaintiffs led by Center for Food Safety challenged the permits, and the district court granted a preliminary injunction requiring the destruction of stecklings planted under the permits. The Ninth Circuit reversed, holding that plaintiffs failed to show a likelihood of irreparable injury. Id. at 1174. The permits then expired, and on remand the district court granted defendants' motion to dismiss as moot because plaintiffs failed to satisfy the exception for actions capable of repetition yet evading review. Ctr. for Food Safety v. Vilsack, No. 10-4038 (N.D. Cal. Apr. 14, 2011). Plaintiffs appealed, and that appeal is now pending before the Ninth Circuit.

APHIS then issued the decision at issue here. It deregulated Roundup Ready root crop production and seed crop production when conducted under certain mandatory conditions, and it did so "on an interim basis" while an environmental assessment for the full deregulation could proceed. 76 Fed. Reg. 6759, 6759 (Feb. 8, 2011). The interim decision provided that it would be in effect until December 31, 2012, or until APHIS issued a final determination as to full deregulation. Id. at 6761.

Sugar beet farmers (together with plaintiff-intervenor Monsanto Company, hereinafter "Grant plaintiffs") filed suit, challenging three mandatory conditions imposed by APHIS's

interim decision. Grant v. Vilsack, No. 11-308 (Feb. 7, 2011). Center for Food Safety and others (hereinafter "CFS plaintiffs") also filed suit, seeking to enjoin the interim decision for alleged failure to comply with the National Environmental Policy Act, 42 U.S.C. §§ 4321 et seq., arguing (1) that APHIS's environmental assessment was procedurally and substantively inadequate, and (2) that by separating the permitting decision from the partial deregulation, APHIS engaged in impermissible segmenting that tainted the analysis. Ctr. for Food Safety v. Vilsack, No. 11-586 (Feb. 23, 2011). This Court consolidated the cases and the parties filed motions and cross-motions for summary judgment. On July 20, 2012, APHIS published a final determination, granting the petition for full deregulation. 77 Fed. Reg. 42,693 (July 20, 2012). Accordingly, the interim partial deregulation decision at issue here expired on that date. Because the challenged decision had expired, the Court ordered the parties to file supplemental briefs on mootness.

## STANDARD OF REVIEW

"The objection that a federal court lacks subject-matter jurisdiction may be raised by a party, or by a court on its own initiative, at any stage in the litigation, even after trial and the entry of judgment." Arbaugh v. Y & H Corp., 546 U.S. 500, 506 (2006) (citation omitted); see also Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." (emphasis added)).

## ANALYSIS

**I.     Background**

Article III of the Constitution limits federal court jurisdiction to "'actual, ongoing controversies.'" Theodore Roosevelt Conservation P'ship v. Salazar, 661 F.3d 66, 78 (D.C. Cir.

2011) (quoting Honig v. Doe, 484 U.S. 305, 317 (1988)). "[A] federal court has no authority to give opinions upon moot questions or abstract propositions, or to declare principles or rules of law which cannot affect the matter in issue in the case before it." Church of Scientology of Cal. v. United States, 506 U.S. 9, 12 (1992) (internal quotation marks omitted).

Hence, in order to satisfy Article III, a plaintiff must demonstrate that a case or controversy exists at all stages of the litigation. See Lewis v. Cont'l Bank Corp., 494 U.S. 472, 477-78 (1990); see also Spencer v. Kemna, 523 U.S. 1, 7 (1998) ("[T]hroughout the litigation, the plaintiff must have suffered, or be threatened with, an actual injury traceable to the defendant and likely to be redressed by a favorable judicial decision." (internal quotation marks omitted)). "Even where litigation poses a live controversy when filed, the [mootness] doctrine requires a federal court to refrain from deciding it if events have so transpired that the decision will neither presently affect the parties' rights nor have a more-than-speculative chance of affecting them in the future." Clarke v. United States, 915 F.2d 699, 701 (D.C. Cir. 1990) (en banc).

That is precisely how events have transpired here. CFS Plaintiffs and Grant plaintiffs have both challenged an interim agency decision that has expired and no longer has any legal effect. The relief they seek—a declaratory judgment that the action is invalid and vacatur of the decision—is now ineffectual. See Hewitt v. Helms, 482 U.S. 755, 761 (1987) ("The real value of the judicial pronouncement [in a declaratory judgment suit]—what makes it a proper judicial resolution of a 'case or controversy' rather than an advisory opinion—is in the settling of some dispute which affects the behavior of the defendant towards the plaintiff."). Because the Court "can neither invalidate, nor require the [agency] to adhere to" an agency decision that has "disappeared into the regulatory netherworld," Roosevelt, 661 F.3d at 79 (internal quotation marks omitted), the Court "can offer no relief which can redress [plaintiffs'] asserted grievance,"

5

City of Houston v. Dep't of Hous. & Urban Dev., 24 F.3d 1421, 1426 (D.C. Cir. 1994) (internal quotation marks omitted), and plaintiffs' claims are moot unless their challenge falls into an exception to the mootness doctrine.

All parties agree to this much. But each set of plaintiffs argues that their respective claims fall under an exception to the mootness doctrine for claims capable of repetition yet evading review.

## II. Capable of Repetition yet Evading Review

"[E]ven though the specific action that the plaintiff challenges has ceased, a claim for declaratory relief will not be moot" if "the specific claim fits the exception for cases that are capable of repetition, yet evading review." Del Monte Fresh Produce Co. v. United States, 570 F.3d 316, 321 (D.C. Cir. 2009) (internal quotation marks omitted). "The exception applies where (1) the challenged action is in its duration too short to be fully litigated prior to cessation or expiration, and (2) there is a reasonable expectation that the same complaining party will be subject to the same action again." FEC v. Wis. Right to Life, Inc., 551 U.S. 449, 462 (2007) (internal quotation marks omitted). This doctrine "applies only in exceptional situations." City of Los Angeles v. Lyons, 461 U.S. 95, 109 (1983).

### A. CFS plaintiffs

#### 1. Evading Review

CFS plaintiffs argue that the exception applies only to their second claim—that APHIS's analysis was improperly segmented because APHIS failed to consider the permit decision and the partial deregulation decision in a single Environmental Impact Statement. Their theory is that APHIS's partial deregulation analysis was predetermined by its prior decision to grant the

6

permits and otherwise tainted by considering the effect of the permits separately from the partial deregulation. CFS Pls.' Compl., No. 11-586 [Docket Entry 1] ¶¶ 88-93; see also CFS Pls.' Mot. for Summ. J. [Docket Entry 103] at 18 (Sept. 27, 2011).

CFS plaintiffs contend that this claim evades review because the partial deregulation decision they are challenging, by its terms, lasted less than two years: it expired in 23 months or upon a final determination as to full deregulation, whichever came first, 76 Fed. Reg. at 6761. The D.C. Circuit has held that "agency actions of less than two years' duration cannot be fully litigated prior to cessation or expiration, so long as the short duration is typical of the challenged action." Del Monte, 570 F.3d at 322 (internal quotation marks omitted). But CFS plaintiffs have presented no evidence whatsoever that APHIS's interim decisions "typical[ly]" last less than two years. Compare id. (finding an action evades review based on concrete evidence about the average and maximum time agency had previously taken for action). CFS plaintiffs rely solely on the decision in this case; that the decision in this case expired before it could be reviewed indicates only that, absent an exception, the case is moot—it says nothing about whether the issue "evades" review in the future.

The key question is not whether the agency's interim decisions typically last less than two years, but whether the legal claim, i.e., the alleged wrong, evades review. See, e.g., Lyons, 461 U.S. at 109 ("Lyons' claim that he was illegally strangled remains to be litigated in his suit for damages; in no sense does that claim 'evade' review."); Campbell v. Clinton, 203 F.3d 19, 34 (D.C. Cir. 2000) ("Circuit precedent requires us to determine whether the activity challenged is 'inherently' of a sort that evades review"). The "capable of repetition" exception applies to claims that are inherently short-lived. See, e.g., Del Monte, 570 F.3d at 324 (claim that agency unlawfully delayed beyond nine-day period in responding to application for short-term license);

7

Christian Knights of the Ku Klux Klan Invisible Empire, Inc. v. District of Columbia, 972 F.2d 365, 368 (D.C. Cir. 1992) (challenging city's refusal to issue permits for an upcoming march); Wis. Right to Life, 551 U.S. at 460 (challenging agency's prohibition on certain advertisements shortly before an election); Roe v. Wade, 410 U.S. 113, 125 (1973) (claiming the right to terminate a pregnancy). In sharp contrast, CFS plaintiffs' legal claim—that an agency improperly segmented its decision—can arise in a context with ample time for review.

Indeed, CFS plaintiffs might well be able to litigate this very claim if they choose to challenge APHIS's full deregulation. Assuming, as the Court must at this stage, that their position is meritorious, see NB ex rel. Peacock v. District of Columbia, 682 F.3d 77, 82 (D.C. Cir. 2012), the theory that the permitting decision irretrievably committed the agency to partial deregulation similarly would apply to an argument that the permitting decision ultimately committed APHIS to full deregulation. And just as APHIS's partial deregulation decision allegedly provided an inadequate environmental analysis that failed to account for planting under the permit, the same issue can arise as to APHIS's final deregulation decision in this or any other case. At its core, CFS plaintiffs' claim is about the sequence of events in which APHIS first approves permits, then issues a decision deregulating a crop. That sequence can occur regardless of whether the deregulating decision is interim or permanent. Accordingly, the claim is not inherently short-lived, and does not evade review.

### 2. Capable of Repetition

CFS plaintiffs' action falls outside the mootness exception for another independent reason: it does not satisfy the capable of repetition standard. "The second prong of the 'capable of repetition' exception requires a reasonable expectation or a demonstrated probability that the

same controversy will recur involving the same complaining party." Wis. Right to Life, 551 U.S. at 463 (internal quotation marks omitted). In determining whether a reasonable expectation exists, a court must consider whether the "legal wrong complained of by the plaintiff"—rather than the precise factual scenario alleged—is "reasonably likely to recur." Del Monte, 570 F.3d at 324.

Defendants argue that given APHIS's full deregulation, no agency action related to sugar beets is likely to recur. That construction is too narrow, for the type of crop is irrelevant to the legal wrong alleged; an agency can improperly segment the deregulation and permitting decisions regardless of the crop at issue. See id. at 324-25 (setting aside "[t]he unrepeatable particulars of" the agency's challenged action because they "are irrelevant to [plaintiff's] legal theory"). CFS plaintiffs are organizations that monitor all genetically engineered crops, and they are likely to be harmed by, and to challenge, an agency decision improperly deregulating any such crop.

Still, even under this broad construction, here nothing creates a reasonable expectation that the claim will recur. CFS plaintiffs offer only the scantest evidence of potential recurrence. They argue that language in a pending appropriations bill that requires APHIS to issue commercial permits upon vacatur of a crop deregulation shows that the agency and industry "anticipate[] having to face this same circumstance again." CFS Pls.' Supp. Mem. [Docket Entry 175] at 14 (Aug. 10, 2012). Language inserted for unclear reasons into unenacted legislation addressing the possibility of an event is far from enough to establish a reasonable expectation that it will occur. And if the bill were enacted, permits would be subject to different legal requirements, so the legal claim at issue here would not repeat in any case.[1]

---

[1] Similarly unpersuasive is CFS plaintiffs' claim that industry parties "have petitioned APHIS for partial deregulation in the past." CFS Pls.' Supp. Mem., at 14. There have only been two such prior petitions, hardly a

CFS Plaintiffs' scant arguments about recurrence fall well short of the concrete evidence that supported an expectation of recurrence in other cases. For instance, in Del Monte, plaintiffs alleged that the agency unlawfully delayed in issuing a short-term commercial license that it had since granted. Plaintiffs submitted declarations that they would apply for such licenses on a continuing basis in the future. They also submitted evidence that they would suffer the same allegedly improper delay: declarations that the agency had delayed "on five separate occasions in the past," and the agency's own announcement that it expects future delays. See Del Monte, 570 F.3d at 324; see also Turner v. Rogers, 131 S. Ct. 2507, 2515 (2011) (plaintiff who has frequently failed to pay child support, has been subject to several civil contempt hearings, and was repeatedly incarcerated for periods under 12 months, including after the prison term he was seeking to challenge, is reasonably likely to be subject to another civil contempt proceeding that may result in incarceration).

Moreover, even assuming that APHIS will confront similar circumstances, CFS plaintiffs offer no evidence that the alleged wrong would recur, i.e., that APHIS would again treat the permitting/partial deregulation sequence in an arguably impermissibly segmented manner. The D.C. Circuit has declined to apply the mootness exception for this very reason, explaining that "[plaintiff] has provided no evidence—beyond the alleged past violations of a superseded [agency decision]—that the [agency] will commit any such violation. Our general presumption that a federal agency will follow its own regulations therefore stands." Roosevelt, 661 F.3d at 79. Absent evidence to the contrary, this Court must also presume that APHIS will follow its regulations and governing statutes to properly consider the full environmental impact of any future partial deregulation and permit combination.

---

convincing pattern. And only one of the two was granted. Moreover, establishing the likelihood of future partial deregulation fails to establish the likely recurrence of the sequence that spawned the alleged legal wrong challenged here.

### 3. <u>Grant</u> plaintiffs

<u>Grant</u> plaintiffs seek to challenge three specific conditions in APHIS's interim partial deregulation decision. They argue that their claims, too, fall under the capable of repetition yet evading review exception. Not so.

First, nothing about <u>Grant</u> plaintiffs' claims challenging specific conditions imposed by the partial deregulation evades review because those claims are not inherently short in duration. On the contrary, the same issues can arise in any partial deregulation, which in turn need not be interim. <u>See</u> <u>Grant</u> Pls.' Compl., No. 11-308 [Docket Entry 1] ¶ 23 (Feb. 7, 2011) (partial deregulation, one that is granted with conditions, "<u>may</u> be approved in part as an interim measure, pending completion of review of a petition for full unconditional deregulation" (emphasis added)).

Nor are these claims capable of repetition. <u>Grant</u> plaintiffs rely solely on the possibility that if <u>CFS</u> plaintiffs challenge the full deregulation, and if that challenge is meritorious, and if the court as a remedy reinstates the interim decision or if the agency itself reissues the same decision with the same conditions, then the claims would repeat. <u>See</u> <u>Grant</u> Pls.' Opening Br. on Mootness [Docket Entry 174] at 1-2 (Aug. 10, 2012) ("If <u>CFS</u> plaintiffs were to commit here that they will not challenge the new [sugar beet] deregulation determination, <u>Grant</u> plaintiffs would agree that these consolidated cases are moot."). Assuming that <u>CFS</u> plaintiffs do challenge the full deregulation, it is entirely speculative that the challenge will be successful.[2] It is even more speculative that a court will reinstate the interim deregulation as a remedy—indeed, such a remedy is virtually inconceivable because the interim decision has expired on its own terms, <u>see</u>

---

[2] <u>Grant</u> plaintiffs also argue that the Court should stay the action pending <u>CFS</u> plaintiffs' determination whether to challenge the full deregulation. Because the claim is moot regardless of <u>CFS</u> plaintiffs' decision, there is no reason for a stay.

76 Fed. Reg. at 6761. Nor is there any indication that APHIS would itself reinstate an identical decision with the same conditions if its full deregulation were vacated. See Fisheries Survival Fund v. Locke, 628 F. Supp. 2d 65, 66-68 (D.D.C. 2009) (rejecting argument based on possibility that new agency opinion will be vacated in relevant part and the court would reinstate the original version of the opinion as a "hypothetical string of events" that is "far too attenuated to save plaintiff's claim from a finding of mootness"). Accordingly, Grant plaintiffs' argument rests on multiple layers of impermissible speculation. See Munsell v. Dep't of Agric., 509 F.3d 572, 583 (D.C. Cir. 2007) ("speculation [as to future events], without more, does not shield the case from a mootness determination" (internal quotation marks omitted)); Beethoven.com LLC v. Librarian of Cong., 394 F.3d 939, 951 (D.C. Cir. 2005) ("A 'theoretical possibility' . . . is not sufficient to qualify as 'capable of repetition.' There must instead be a 'reasonable suspicion' or 'demonstrated probability' that the action will recur." (citations omitted)).

Because there is no likelihood that the same conditions will again be imposed on Grant plaintiffs in similar circumstances, and because their claim does not "evade" review, their action is also moot.

## CONCLUSION

For the reasons discussed above, these actions are now moot and are accordingly **DISMISSED WITH PREJUDICE** in their entirety.

**SO ORDERED.**

/s/
JOHN D. BATES
United States District Judge

Dated: September 25, 2012